IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARSHALL GARNER, | ) |
| | ) |
| | ) Case No.: 10-cv-174 |
| | ) |
| Plaintiff, | ) Judge Robert M. Dow, Jr. |
| | ) |
| v. | ) |
| | ) |
| LAKESIDE COMMUNITY COMMITTEE, | ) |
| JACKIE SHARP, and LORRIE JEFFRIES, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' motion for summary judgment [58]. For the following reasons, Defendants' motion [58] is granted as to Plaintiff's constitutional claims, and the remaining state law claims are dismissed without prejudice. Judgment is entered in favor of Defendants and against Plaintiff.

**I.    Background**

This lawsuit arises out of Plaintiff's termination from employment with Defendant Lakeside Community College ("LCC") on September 11, 2009. In his amended complaint [40], Plaintiff alleges that his termination from LCC violated his constitutional due process rights because he was not afforded a pre- or post-termination hearing. (Am. Cmplt. [40] at ¶¶ 12, 13). Plaintiff further alleges that his constitutional right to freedom of association was violated, in that his termination was politically motivated. (*Id*. at ¶ 28). Plaintiff alleges throughout his complaint that LCC is a "state actor" and that his termination was a "state action." (See, *e.g. id.* at ¶ 22). Additionally, Plaintiff brings state law claims of intentional infliction of emotional distress against all Defendants.

Pursuant to 42 U.S.C. § 1983 (Section 1983), an individual can bring an action for damages for violations of the individual's constitutional rights. *Id.* For a Section 1983 claim, a plaintiff must establish "'that the defendants deprived him of a right secured by the Constitution or laws of the United States, and that the defendants acted under color of state law.'" *Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005) (quoting *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000)); see also *Blum v. Yaretsky*, 457 U.S. 991, 1002-03 (1982) (stating that the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful") (internal quotations omitted).

Relying on the principle that the constitution does not protect a person from private conduct, on February 21, 2010, Defendants moved to dismiss Plaintiff's lawsuit, arguing that Plaintiff had not plausibly alleged that LCC was a state actor when it terminated Plaintiff [see 21]. In its order of August 3, 2010, the Court denied the motion to dismiss [34], concluding that Plaintiff (who was then *pro se*) had "alleged enough at this preliminary stage to avoid dismissal of his complaint under Federal Rule of Civil Procedure 12(b)(6)." *Id.* at 2. However, recognizing that the issue of state action was a "threshold" one, the Court limited initial discovery to that issue alone. *Id.* Following discovery, Defendants filed the instant motion for summary judgment, which argues that there is no genuine issue of material fact regarding LCC's status as a private (*i.e.*, not a state) actor.

The relevant facts are as follows: LCC is a Chicago-based child and family advocacy nonprofit entity.[1] LCC's clients are wards of the State of Illinois aged 0-21, biological parents of

---

[1] The Court takes the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1 statements. L.R. 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. 581, 583–85 (N.D. Ill. 2000). The Seventh Circuit repeatedly has confirmed that a district court has broad discretion to require strict compliance with L.R. 56.1. See, *e.g.*, *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest*

2

these wards, relative care givers of wards, and foster parents and community children and families throughout the Chicago area. LCC is a licensed contractor of the Illinois Department of Children and Family Services (DCFS). LCC enters into contracts with the State to fulfill some traditional public functions. Some of the services that LCC provides include direct service counseling, foster care case management, adoption, guardianship, and advocacy.[2]

As part of its relationship with DCFS, LCC sends DCFS certain compliance reports. Further, as a provider of services to families and children, LCC must comply with certain state and federal statutes and other regulations (including certain consent decrees). Defendants do not require (or obtain) DCFS's approval in making employment decisions regarding the hiring and firing of LCC employees.[3] However, the State requires LCC to perform background checks with DCFS on those whom it hires.

---

*Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. See, *e.g.*, *Malec*, 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted. See L.R. 56.1(a), 56.1(b)(3)(B); see also *Malec*, 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). In addition, the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)(B) statement of additional facts. See, *e.g.*, *Malec*, 191 F.R.D. at 584 (citing *Midwest Imports*, 71 F.3d at 1317). Similarly, the Court disregards a denial that, although supported by admissible record evidence, does more than negate its opponent's fact statement—that is, it is improper for a party to smuggle new facts into its response to a party's L.R. 56.1 statement of fact. See, *e.g.*, *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008).

[2] Plaintiff cites to "Exhibit I" to support its eighth statement of fact, which reads: "The Illinois Department of Children and Family Services provide [sic] Foster Care, Adoption and other services as public functions of the State." See [62] at ¶ 8. The Court could not locate "Exhibit I" anywhere in the record, and accordingly disregards this statement.

[3] Defendants' eleventh statement of facts reads as follows: "Plaintiff alleges that LCC has an exclusive contract with DCFS. Defendants deny this allegation." (Def. SOF at ¶ 11). For support of this assertion, Defendants cite to their answer. Plaintiff takes issue with this statement, characterizing it as "hearsay" and arguing that "Defendant offers no other proof that their company provides services to anyone but the Department of Children and Family Services," and accordingly "[t]his is a[ disputed] issue of material fact." (Pl. Resp. Def. SOF at ¶ 1). As an initial matter, Defendants' statement does not purport to

## II. Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

---

establish that they in fact do not have an "exclusive" contract with DCFS. Defendants only state that they deny Plaintiff's allegation that they do. In any event, as the Court explains below, it is Plaintiff's burden as the party opposing a motion for summary judgment—not Defendants'—to adduce evidence sufficient to create a genuine issue for trial. As the Court noted in its August 3, 2010 order, summary judgment is the "put up or shut up" moment for Plaintiff. See *Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Furthermore, Plaintiff challenges ¶ 12 of Defendants' statement of facts, which reads: "Neither Jackie Sharp nor LCC needs the DCFS' approval for hiring employees." Plaintiff challenges this statement by arguing that Defendant admitted in an interrogatory response that LCC "must comply with IDCFS licensing liason" (whatever that means). (Pl. Resp. Def. SOF at ¶ 3). The Court has reviewed the interrogatory response. There, LCC admits only that it submits certain reports to DCFS's "licensing liaison of agencies and institutions." There is no suggestion in the record that these reports have anything to do with LCC's employees or its employment decisions. Similarly, the record does not support Plaintiff's statement that "all new employees must receive initial training by Illinois Department of Children and Family Services." (Pl. Resp. Def. SOF at ¶ 4).

*Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

III. Analysis

    A. **Constitution-Based Claims**

As discussed above, when a plaintiff brings a § 1983 claim against a defendant who is not a government official or employee, the plaintiff must show that the private person or entity acted under the color of state law. 42 U.S.C. § 1983; see also *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). The requirement "sets the line of demarcation between those matters that are properly federal and those matters that must be left to the remedies of state tort law." See *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349-51 (1974). Both the Supreme Court and lower federal courts have acknowledged the difficulty of determining whether a private entity has acted under the color of state law. See *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 823 (7th Cir. 2009). At its most basic level, the state action doctrine requires that a court find such a "close nexus between the State and the challenged action" such that the challenged action "may be fairly treated as that of the State itself," *Jackson*, 419 U.S. at 351, or may be "fairly attributable to the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

In most cases, the state actor is an officer or employee of state government, and it is easy to conclude that the person's actions are fairly attributable to the state. However, the Court has long recognized that, on some occasions, the acts of a private party are fairly attributable to the state because the party has acted in concert with state actors. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970) (observing that "a State is responsible for the discriminatory act of a

5

private party when the State, by its law, has compelled the act"); see also *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003) (stating that "defendants may be found to act under color of state law when the defendants have conspired or acted in concert with state officials to deprive a person of his civil rights"). In *Blum v. Yaretsky*, 457 U.S. 991 (1982), the Supreme Court held that "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* at 1004.

The Supreme Court has set forth several tests for courts to employ in evaluating the "range of circumstances" that might constitute state action. *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 295 (2001). According to the Seventh Circuit, the various tests can be categorized as (1) the symbiotic relationship test (satisfied when private and public actors carry out a public function); (2) the state command and encouragement test (satisfied when the state requires the actions of the private actor); (3) the joint participation doctrine (satisfied when the private action is the same as the state action); and (4) the public function test (satisfied when private activity is fairly attributable to the state)). *Rodriguez*, 577 F.3d at 823.

Despite the nominal existence of these tests, the Seventh Circuit has made clear that its (and the Supreme Court's) precedents have "revealed that these cases do not so much enunciate a test or series of factors, but rather demonstrate examples of outcomes in a fact-based assessment." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 816 (7th Cir. 2009) (citing *Brentwood*, 531 U.S. at 295; *Tarpley v. Keistler*, 188 F.3d 788, 792 (7th Cir. 1999) ("All of the tests, despite their different names, operate in the same fashion: [ ] by sifting through the facts and weighing circumstances.")). In *Hallinan*, the Seventh Circuit

collected examples of circumstances where action by a private party is properly attributed to the state:

> Private action can become state action when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights, *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980); where the state compels the discriminatory action, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); when the state controls a nominally private entity, *Pa. v. Bd. of Dirs. of City Trusts*, 353 U.S. 230, 231 (1957); when it is entwined with its management or control, *Evans v. Newton*, 382 U.S. 296, 299, 301 (1966); when the state delegates a public function to a private entity, *Terry v. Adams*, 345 U.S. 461, 484 (1953); *West v. Atkins*, 487 U.S. 42, 56-57 (1988); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 628 (1991), or when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974).

*Hallinan*, 570 F.3d at 815-16.

The thrust of Plaintiff's response can be summed up in the following quote: Plaintiff believes that LCC is a state actor because the State "contract[s] out traditional public functions, while maintaining control over [LCC]." (Pl. Mem. at 1). There are really two parts to this argument—(1) an allegation that Illinois exercises some degree of control over LCC, and (2) an allegation that LCC is performing functions that are traditionally the purview of the State. The Court will begin with the second of the points.

If the state delegates a traditionally exclusive public function to a private party, the private party can be considered a state actor for section 1983 purposes. See *West v. Atkins*, 487 U.S. 42, 55-56 (1988). However, "the relevant question is not simply whether a private group is serving a 'public function.'" *Rendell-Baker*, 457 U.S. at 842. Rather, "the question is whether the function performed has been traditionally the *exclusive* prerogative of the State." *Id.* (internal quotation marks omitted) (emphasis in original). Plaintiff argues that many of the services that LCC provides (including foster care case management, adoptions, and prevention of child abuse) are functions that the State has traditionally performed, (Pl. Mem. at 5), and they may very well

7

be.  But where Plaintiff's argument falters is in the complete absence in the record of any evidence that the State has delegated to LCC a function that has been the *exclusive* prerogative of the State.  *Rendell-Baker*, 457 U.S. at 842.  In order to determine whether a practice is the "exclusive" prerogative of the state, courts look to the "historical practice" of the particular state at issue.  *Sullivan*, 526 U.S. at 55-57.  Again, Plaintiff has failed to provide any evidence of this type, or any other type that would suggest that any of the functions that LCC performs has traditionally been the "exclusive" prerogative of Illinois.  The Court cannot merely assume that functions like foster care case management, adoptions, and prevention of child abuse are functions that are traditionally only performed by the State.  In fact, many courts have found that they are not.  See, *e.g. Letisha A. by Murphy v. Morgan*, 855 F. Supp. 943, 949 (N.D. Ill. 1994) (rejecting argument that under Illinois law, DCFS has the exclusive responsibility of caring for and protecting abused and neglected children and finding that "it may be true that the State of Illinois has historically fought for the rights of minors, but it is not the exclusive function of the State to care for and protect minors who are adjudicated to be abused and neglected by their natural parents"); *Leshko v. Servis*, 423 F.3d 337, 343-44 (3d Cir. 2005) ("No aspect of providing care to foster children in Pennsylvania has ever been the exclusive province of the government."); *Milburn v. Anne Arundel County Dep't of Soc. Serv's.*, 871 F.2d 474, 479 (4th Cir. 1989) ("[t]he care of foster children is not traditionally the exclusive prerogative of the state"); *Malachowski v. City of Keene*, 787 F.2d 704, 710-11 (1st Cir. 1986).

In support of its argument that the services that LCC provides are traditionally the exclusive purview of the State, Plaintiff points to a number of Illinois statutes that establish DCFS and empower it to take various actions for the benefit of children and families.  See 325 ILCS 5/2; 325 ILCS 5/7.2; 20 ILCS 505/4a.  However, contrary to Plaintiff's assertions, none of

these statutes establishes that DCFS is *alone* or *solely* responsible for protecting children and families in Illinois. Plaintiff cites 325 ILCS 5/2 for the proposition that the functions assigned to DCFS are "non-delegable." To the contrary, 325 ILCS 5/2 specifically provides that "[i]n performing any of the[] duties [assigned to it], the Department may utilize such protective services of voluntary agencies as are available." *Id*.; see also 20 ILCS 505/4a(c).

Statutes that empower or instruct state agencies to perform some function do not, as a matter of law, establish that the function at issue is *exclusively* a state function. For instance, in *Rendell-Baker*, the plaintiff had argued that a certain privately operated school for maladjusted high school students was a state actor. The Supreme Court noted that "Chapter 766 of the Massachusetts Acts of 1972 demonstrates that the State intends to provide services for such students at public expense." 457 U.S. at 842. However, the Court concluded that "that legislative policy choice in no way makes these services the *exclusive* province of the State." *Id.* (emphasis added) ("That a private entity performs a function which serves the public does not make its acts state action."); see also *Letisha A.*, 855 F. Supp. at 949.

Next, Plaintiff argues that "because the State provides the training of employees of [LCC], and [LCC] has to report the program's compliance and agency performance, there is sufficient State entwinement with management as to hold the State responsible for the deprivation of due process." (Pl. Mem. at 1; see also *id*. at 2 ("the State controls all aspects of the approval of hiring through regulations and even require [sic] foundational training of all [LCC] employees.")). Relatedly, Plaintiff cites *Blum* for the proposition that Illinois "provides such significant encouragement, either overt or covert, that the choice must in law be deemed that of the State." (Pl. Mem. at 2 (citing *Blum*, 457 U.S. at 1004)). All of these arguments attempt to create the required "nexus" between DCFS and LCC by establishing that DCFS

9

somehow controls LCC in a material way such that LCC's acts can be fairly attributed to the State. See *Blum*, 457 U.S. at 1004; *Bd. of Dirs. of City Trusts*, 353 U.S. at 231; *Newton*, 382 U.S. at 299, 301.

These arguments fail for a complete lack of evidentiary support. Plaintiff provides no evidence that the State directs the training of LCC's employees or is otherwise involved in LCC's employment decisions.[4] Plaintiff offers no evidence that the State controls, directs, or encourages the business of LCC in any other way (either overtly or covertly).

Instead, the evidence that Plaintiff has adduced only establishes that LCC must comply with certain Illinois statutes, regulations, and consent decrees in providing services to its clients, and must submit various reports to DCFS. Further, while there is no evidence that LCC has an "exclusive" contract with DCFS, it appears that most or all of its business arises from its contract with the State.

These sorts of contacts are insufficient as a matter of law to establish that LCC is a state actor. A private actor does not become a state actor by virtue of being tightly regulated by the state. *Rendell-Baker*, 457 U.S. at 841 (quoting *Jackson*, 419 U.S. at 350) ("state regulation, even if 'extensive and detailed,' d[oes] not make a utility's actions state action")); see also *Evans v. Torres*, 1996 WL 5319, at *5 (N.D. Ill. 1996) (stating that "individuals do not become state actors merely by acting in accordance with state statutes"). And a private actor that contracts with the government "do[es] not become" a state actor "by reason of the [private actor's]

---

[4] There is one exception; Defendants admit that the state requires LCC to perform background checks with DCFS on those whom it hires. (Def. Mem. at 5). Plaintiff does not rely on this fact in his response, and the Court's own research was unable to uncover a case where a state's requirement that its contractor's potential hires submit to a background check was sufficient to raise a question regarding whether there was an adequately "close nexus" between the state and the private party such that the private party could be deemed a state actor.

significant or even total engagement in performing public contracts." *Id.* at 841. Similarly, the receipt of public funds is not enough to make a private party a state actor. *Id.* at 840.[5]

Plaintiff bears the burden of establishing that Defendant LCC is amenable to suit under section 1983. For the reasons explained above, Plaintiff has failed to make a sufficient evidentiary showing on this aspect of its claim. Therefore, summary judgment for Defendants and against Plaintiff on Plaintiff's constitution-based claims is proper. See *Celotex*, 477 U.S. at 323.

### B. State-Law IIED Claims

In addition to his § 1983 claims, Plaintiff also sued Defendants under the state law tort of intentional infliction of emotional distress. Because the Court has granted summary judgment as to all claims over which it has original jurisdiction, it must now address whether to retain jurisdiction over those state law claims. See 28 U.S.C. § 1367(c)(3)). The Seventh Circuit consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additivies Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Finding no justification for departing from that "usual practice" in this case,[6] the Court dismisses *without prejudice* Plaintiff's state law claims for intentional infliction of emotional distress.

---

[5] Briefly and in passing, Plaintiff argues that LCC is a state actor because "it conspired or are [sic] jointly engaged with the State to deprive a person of constitutional rights." (Pl. Mem. at 4). Plaintiff offers no evidentiary support for this argument and the Court need not address it further.

[6] In *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [58] is granted as to Plaintiff's constitutional claims, and the remaining state law claims are dismissed without prejudice. Judgment is entered in favor of Defendants and against Plaintiff.

Dated: June 13, 2011 _____
Robert M. Dow, Jr.
United States District Judge

---

the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id*. at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court. See 735 ILCS 5/13-217; *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). Dismissal without prejudice also is appropriate here because substantial judicial resources have not been committed to the state law counts of Plaintiff's complaint. *Wright*, 29 F.3d at 1251. Finally, this is not a circumstance in which "it is absolutely clear how the pendent claims can be decided." *Id*.